MELVIN R. GOLDMAN (Bar No. 34097)
TERRI GARLAND (Bar No. 169563)
D. ANTHONY RODRIGUEZ (Bar No. 162587)
MARGARET L. WU (BAR NO. 184167)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: mwu@mofo.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re HARMONIC INC.<br><br>SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. C-00-2287-PJH<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE SPECIFIED ALLEGATIONS IN THIRD CONSOLIDATED AMENDED COMPLAINT**<br><br>Hearing To Be Set At The Court's Discretion |

1

**TABLE OF CONTENTS**

2

Page

3 TABLE OF AUTHORITIES ...............................................................................................ii

4 NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO
STRIKE .............................................................................................................................iv

5

ISSUES TO BE DECIDED ...............................................................................................iv

6

INTRODUCTION ..............................................................................................................1

7

BACKGROUND AND SUMMARY OF ALLEGATIONS ...............................................2

8

        A.    Alleged Key Dates .................................................................................2

9

        B.    The Second Consolidated Amended Complaint .....................................2

10

        C.    This Court's Dismissal of the Second Consolidated Amended
              Complaint ...............................................................................................3

11

        D.    The Ninth Circuit's Decision .................................................................3

12

        E.    Summary of the Third Consolidated Amended Complaint's
              Allegations .............................................................................................4

13

ARGUMENT ......................................................................................................................5

14

    I.     THE SECTION 15 CLAIM SHOULD BE DISMISSED FOR
         FAILURE TO PLEAD CONTROL PERSON LIABILITY .........................5

15

    II.    PLAINTIFFS DO NOT STATE A SECTION 12(a)(2) CLAIM
         AGAINST THE INDIVIDUAL DEFENDANTS .........................................6

16

        A.    Only "Sellers" May Be Sued Under Section 12(a)(2). ..........................6

17

        B.    Plaintiffs Do Not Allege That The Individual Defendants Were
              "Sellers." ................................................................................................8

18

    III.   THE STATEMENT OF OPINION REGARDING THE "BEST
         INTERESTS" OF C-CUBE SHAREHOLDERS CANNOT BE A
         BASIS FOR ANY CLAIM. .........................................................................9

19

    IV.   "BACKGROUND" ALLEGATIONS THAT HAVE BEEN HELD
         NOT TO STATE AN EXCHANGE ACT CLAIM AND THAT ARE
         NOT ACTIONABLE UNDER THE SECURITIES ACT SHOULD
         BE DISMISSED OR STRICKEN ..............................................................11

20

    V.    CONCLUSION ..........................................................................................14

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Cent. Laborers Pension Fund v. Merix Corp.,*
No. CV 04-826-MO, 2005 WL 2244072 (D. Or. Sept. 15, 2005) ............................................. 9

*CogniTest Corp. v. The Riverside Publ. Co.,*
94 C 4741, 1995 U.S. Dist. LEXIS 8721 (N.D. Ill. June 21, 1995).................................... 12, 13

*Freedman v. Value Health, Inc.,*
135 F. Supp. 2d 317 (D. Conn. 2001) .................................................................... 10

*Gollomp v. MNC Fin., Inc.,*
756 F. Supp. 228 (D. Md. 1991) ..................................................................... 10, 11

*In re Capstead Mortgage Corp. Secs. Litig.,*
258 F. Supp. 2d 533 (N.D. Tex. 2003) ...................................................................... 6

*In re DDI Corp. Sec. Litig.,*
Nos. CV 03-7063 NM, CV 03-7883, CV 03-7999, CV 03-8344,
CV 04-0735, 2005 WL 3090882 (C.D. Cal. July 21, 2005) ...................................................... 9

*In re Daou Sys., Inc. Sec. Litig.,*
411 F.3d 1006 (9th Cir. 2005)......................................................................... 7, 8

*In re Daou Sys., Inc. Sec. Litig.,*
Civil No. 98-CV-1537-L (S.D. Cal. May 10, 2006) .................................................................. 8

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds,*
510 U.S. 517 (1994) .................................................................................... 12

*In re Infonet Servs. Corp. Secs. Litig.,*
310 F. Supp. 2d 1080 (C.D. Cal. 2003)...................................................................... 9

*In re McKesson HBOC Sec. Litig.,*
126 F. Supp. 2d 1248 (N.D. Cal.2000)...................................................................... 10

*In re Regal Commc'ns Corp. Sec. Litig.,*
Master File No. 94-179, 1996 U.S. Dist. LEXIS 10287 (E.D. Pa. July 17, 1996)...................... 6

*In re Stratosphere Corp. Sec. Litig.,*
1 F. Supp. 2d 1096 (D. Nev. 1998) .......................................................................... 9

*Kalnit v. Eichler,*
85 F. Supp. 2d 232 (S.D.N.Y. 1999) ................................................................... 5, 6

*Kane v. Madge Networks N.V.,*
No. C-96-20652-RMW, 2000 U.S. Dist. LEXIS 19984 (N.D. Cal. May 26, 2000) .......... 10, 11

*Moore v. Kayport Package Express, Inc.,*
885 F.2d 531 (9th Cir. 1989)............................................................................. 7

*Neilson v. Union Bank of Cal. N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................. 13

*Paul M. Harrod Co. v. A.B. Dick Co.*,
   194 F. Supp. 502 (N.D. Ohio 1961) ...................................................................... 13

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................. 7, 8

*Rochez Bros., Inc. v. Rhoades*,
   527 F.2d 880 (3d Cir. 1975) ..................................................................................... 6

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .................................................................................... 9

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996) .................................................................................... 9

## STATUTES

15 U.S.C.
   § 77l(a)(2) ............................................................................................................... 7

Federal Rules of Civil Procedure
   Rule 9(b) ............................................................................................................. 3, 13
   Rule 12(b)(6) ....................................................................................................... 1, 6
   Rule 12(f) .............................................................................................................. 12

## OTHER AUTHORITIES

Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*
   § 7.2 at 579 (5th ed. 2005) ...................................................................................... 9

**NOTICE OF MOTION AND MOTION TO DISMISS**
**AND MOTION TO STRIKE**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD

Please take notice that Defendants Harmonic Inc., Anthony J. Ley, Robin N. Dickson, Moshe Nazarathy, Floyd Kvamme, David Lane, Barry Lemieux, and Michel Vaillaud hereby move the Court, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss claims and allegations in the Third Consolidated Amended Complaint (the "TAC") that are specified in the accompanying Memorandum of Points and Authorities.  Defendants also move the Court, pursuant to Rule 12(f), to strike paragraphs 45-56, 67-70, 74-76, 80, and 82 of the TAC.  These Motions are based on this Notice of Motion and Motion to Dismiss and Motion to Strike, the accompanying Memorandum of Points and Authorities, the June 23, 2006 Declaration of D. Anthony Rodriguez and its exhibit, and any other written or oral argument that may be presented at or before the time this Court takes the Motions under submission.

**ISSUES TO BE DECIDED**

1.      Does the Complaint state a claim for control person liability under Section 15 of the Securities Act against the Company, its now-retired Chief Executive Officer, and Chief Financial Officer where they also are alleged (a) to have been primary violators, and (b) to have been controlled by each other?

2.      Does the Complaint state a claim for liability under Section 12(a)(2) of the Securities Act of 1933 against individuals who are not "sellers" as defined by that statute?

3.      Is any Defendant liable for a statement about other persons' opinions that nobody is alleged to have disbelieved?

4.      Should the Court dismiss and strike allegations regarding statements that are not actionable under the Securities Act — when only Securities Act claims remain in this case — and that this Court and the Ninth Circuit have ruled do not state a claim under the Securities Exchange Act of 1934?

1

**INTRODUCTION**

2        The Ninth Circuit gave Plaintiffs leave to amend their control person claim under

3   Section 15 of the Securities Act of 1933 against Harmonic.  Plaintiffs have amended the Section

4   15 claim against Harmonic but have also added a defendant to that claim, added defendants to the

5   Section 12(a)(2) claim, and added a new basis for their Section 11 and Section 12(a)(2) claims.

6   Even with these amendments, Plaintiffs' new complaint is subject to dismissal under Rule

7   12(b)(6).[1]

8        Specifically, the Section 15 control person claim against Harmonic fails for two

9   independent reasons.  First, Plaintiffs allege Harmonic also was a primary violator — but a party

10  is either a primary violator or a control person, not both.  Second, Plaintiffs allege that Harmonic

11  controlled others, yet allege that other defendants, in turn, controlled Harmonic.  As a matter of

12  law, Harmonic cannot be both controlling and controlled.  The Section 15 claims against Mr. Ley

13  and Mr. Dickson fail to state a claim for the same two reasons.  The Section 12(a)(2) claim

14  against the Individual Defendants fails because no Individual Defendant is a Section 12(a)(2)

15  "seller."  The new amendments to the Sections 11 and 12(a)(2) claims regarding the C-Cube

16  Board's opinion that the Harmonic-DiviCom merger was in C-Cube shareholders' interests fail to

17  state a claim because Plaintiffs do not plead facts showing that the C-Cube Board did not

18  sincerely hold this opinion.  These allegations and claims should be dismissed without leave to

19  amend.

20       Only the Registration Statement and Prospectus can serve as bases for Plaintiffs'

21  Securities Act claims in this case, since dismissal with prejudice of all other claims was upheld on

22  appeal.  Yet the TAC includes allegations that depict Defendants as having made false and

23  misleading statements in press releases and analyst reports.  Since this Court and the Ninth

24  _____

25       [1] In addition to Harmonic, the Individual Defendants named in the Third Amended
    Complaint are Anthony Ley (Harmonic's CEO until his 2006 retirement); Robin Dickson
26  (Harmonic's CFO); and five current or former Harmonic directors (Moshe Nazarathy, Floyd
    Kvamme, David Lane, Barry Lemieux, and Michel Vaillaud).  Messrs. Kvamme, Lane, Lemieux,
27  Vaillaud, and Dickson are new defendants to the Section 12(a)(2) claim, and Mr. Dickson is a
    new defendant to the Section 15 claim.

28

1  Circuit have ruled that these other statements failed to support claims under the Securities

2  Exchange Act of 1934, these statements are not at issue in this Securities Act case, and therefore

3  should be dismissed or stricken.

**BACKGROUND AND SUMMARY OF ALLEGATIONS**

### A.  Alleged Key Dates

6       On October 27, 1999, Harmonic issued a press release announcing that it had agreed to a

7  merger by which Harmonic would merge with DiviCom, which was a subsidiary of C-Cube

8  Microsystems, Inc. ("C-Cube"), by acquiring C-Cube after C-Cube spun off its non-DiviCom

9  assets.  (TAC ¶ 33.)  Harmonic filed a Registration Statement containing a Harmonic and C-Cube

10  Joint Proxy Statement/Prospectus on March 23, 2000.  (TAC ¶ 57.)  On April 24, 2000, the

11  companies' shareholders voted to approve the merger.  (TAC ¶ 77.)  The merger closed on May

12  3, 2000.  (TAC ¶ 81.)

13       On May 15, 2000, Harmonic filed a Form 10-Q that reported DiviCom's first quarter of

14  2000 income (when DiviCom was still a C-Cube subsidiary) had declined from the first quarter of

15  1999, while DiviCom's revenues had increased 3%.  (TAC ¶¶ 101-102.)  On June 12, 2000,

16  Harmonic executives stated at a conference that Harmonic "'lacked visibility' into sales to

17  AT&T."  (TAC ¶ 108.)  On June 26, 2000, Harmonic announced preliminary results for the

18  second quarter, which Plaintiffs allege were "approximately half the amount previously forecast

19  by defendants."  (TAC ¶¶ 111, 112.)   The first of these consolidated actions was filed two days

20  later.

### B.  The Second Consolidated Amended Complaint

22       Plaintiffs' Second Consolidated Amended Complaint (the "SAC") alleged that Harmonic,

23  C-Cube, and individuals associated with the companies had misrepresented Harmonic's

24  performance and prospects by making false or misleading statements about Harmonic's sales to

25  AT&T, and misrepresented DiviCom's financial condition by failing to report that DiviCom's

26  sales had declined after the merger announcement, which led to customer concerns about how the

27  merger would affect them.  The Securities Act claims were based solely on the Registration

28  Statement and Prospectus.  Plaintiffs asserted these claims against the following Defendants:

1   (1) Sections 10(b), 14, and SEC Rule 14a-9 against all Harmonic and C-Cube defendants (except

2   Mr. Dickson in the Section 14 and Rule 14a-9 claims); (2) Section 20(a) against Harmonic,

3   C-Cube, and Messrs. Ley and Balkanski; (3) Section 11 against Harmonic and Messrs. Ley,

4   Dickson, Nazarathy, Kvamme, Lane, Lemieux, and Vaillaud; and (4) Sections 12(a)(2) and 15

5   against Harmonic and Mr. Ley.

6          **C.    This Court's Dismissal of the Second Consolidated Amended
                    Complaint**
7

8          On November 13, 2002, this Court granted all defendants' motions to dismiss, without

9   leave to amend.  This Court ruled that the Exchange Act claims (*i.e.*, Sections 10(b), 14, and 20)

10  failed to satisfy the pleading requirements of Rule 9(b) and the Private Securities Litigation

11  Reform Act of 1995.  This Court found that the Securities Act claims sounded in fraud, were

12  therefore subject to Rule 9(b)'s pleading requirements, and failed to satisfy those requirements.

13  On June 13, 2003, this Court denied Plaintiffs' motion to amend the Judgment.  Plaintiffs

14  appealed the dismissal of their claims and the denial of their motion to amend the Judgment.

15          **D.    The Ninth Circuit's Decision**

16         The Ninth Circuit issued its decision on Plaintiffs' appeal on November 8, 2005.  The

17  Ninth Circuit affirmed this Court's dismissal with prejudice of the Exchange Act claims,

18  including the "control person" claim under Section 20 of the Exchange Act.  (Nov. 8, 2005 Order

19  at 20-21.)  The Ninth Circuit thereby ended the C-Cube Defendants' involvement in this case.

20  Concluding that the Securities Act claims did not "sound in fraud" and could proceed on

21  allegations that were not pled with particularity, the Ninth Circuit reversed the dismissal of the

22  Section 11 and Section 12(a)(2) claims against Harmonic and its officers and directors who were

23  named in those claims.  (*Id.* at 18-20.)  The Ninth Circuit found it sufficient for pleading purposes

24  that Plaintiffs had alleged that Harmonic had omitted allegedly "material facts" from the

25  Registration Statement and Prospectus that "(1) AT&T's orders of Harmonic had declined and

26  (2) DiviCom's sales had slowed after the October 1999 announcement of the merger between

27  Harmonic and C-Cube (DiviCom)."  (*Id.* at 18, 20.)

28

1  The Ninth Circuit affirmed this Court's dismissal of the Section 15 claim against

2  Harmonic, noting "Plaintiffs' theory of control person liability against Defendant Harmonic is

3  unclear, since it rests on allegations that Harmonic exerted control over itself." (*Id.* at 22.) The

4  Ninth Circuit granted Plaintiffs leave to amend the Section 15 claim against Harmonic. (*Id.*) The

5  Ninth Circuit reversed the dismissal of the Section 15 claim against Mr. Ley. (*Id.* at 21-22.) The

6  Ninth Circuit did not grant Plaintiffs leave to amend any other claim or to add parties to any

7  claim.[2]

8  Plaintiffs and Defendants petitioned for rehearing. The Ninth Circuit denied the petitions

9  without comment on February 16, 2006.

   **E.    Summary of the Third Consolidated Amended Complaint's**
10          **Allegations**

11  The TAC's Sections 11 and 12(a)(2) claims repeat the SAC's previous allegations of

12  omissions from the Registration Statement and Prospectus of negative information about

13  DiviCom's first quarter 2000 sales and Harmonic's sales to AT&T. Plaintiffs allege that the

14  Registration Statement was false or misleading regarding DiviCom because it stated that a loss of

15  or reduction in orders from a significant customer would harm the combined company's business,

16  but failed to disclose that DiviCom was already experiencing a reduction in orders from three key

17  customers. (TAC ¶ 90.) Plaintiffs allege that the Registration Statement was false or misleading

18  because it stated that sales to AT&T had "accounted for an increasing significant portion of

19  [Harmonic's] historic net sales" and reported historical sales figures without disclosing that sales

20  and orders from AT&T had already dropped dramatically. (TAC ¶ 85.) Plaintiffs have added to

21

22  _____

23  [2] The TAC goes well beyond the limited leave to amend that the Ninth Circuit granted Plaintiffs. Indeed, this Court appears to have expected the amendment to concern only the Section 15 claim against Harmonic. (April 19, 2006 Scheduling Order at 1 (stating that Court had

24  requested a status statement "to find out whether (1) plaintiffs would amend the complaint to assert a Section 15 claim against Harmonic …").) Plaintiffs have not sought this Court's

25  permission to make amendments beyond their Section 15 claim against Harmonic. For this reason alone, the amendments other than those to the Section 15 claim against Harmonic (which

26  should be dismissed for the reasons stated below) should be dismissed or stricken. Nevertheless, this memorandum assumes that leave for the additional amendments would be granted, and

27  demonstrates that all of the amendments should fail in any event.

28

1    these claims allegations that the C-Cube Board's statement of opinion that the merger was in the

2    interests of C-Cube shareholders was false.  (TAC ¶¶ 91, 92.)

3          The C-Cube Defendants are no longer parties to this case.  The TAC repeats the Section

4    15 claim against Harmonic and Mr. Ley, and adds Mr. Dickson as a Defendant.  Plaintiffs allege

5    all three Defendants were primary violators and control persons, with Harmonic controlling Mr.

6    Ley and Mr. Dickson, Mr. Ley controlling Harmonic, and Mr. Dickson controlling Harmonic.

7    (TAC ¶¶ 127-29, 138-40.)  Finally, Plaintiffs also have included approximately eight pages of

8    allegations that closely resemble Exchange Act allegations in the SAC that were dismissed with

9    prejudice.  (TAC ¶¶ 45-56, 67-80, 82.)  Plaintiffs call these allegations "background" and

10   incorporate them into their Securities Act claims.  (TAC ¶¶ 122, 132.)  They are the subject of

11   Defendants' motion to strike.

12                                    **ARGUMENT**

13   **I.      THE SECTION 15 CLAIM SHOULD BE DISMISSED FOR
             FAILURE TO PLEAD CONTROL PERSON LIABILITY.**

14

15         Plaintiffs have attempted to replead the Section 15 claim against Harmonic by alleging

16   that Harmonic controlled Messrs. Ley and Dickson "in its capacity as their employer," and

17   "signed" the Registration Statement, Prospectus, and certain other SEC filings "and caused the

18   Registration Statement [and Prospectus] to be prepared, drafted, revised and approved."

19   (TAC ¶¶ 129, 140.)  The TAC adds a Section 15 claim against Mr. Dickson, alleging that he

20   "controlled Harmonic, by virtue of his position as CFO."  (TAC ¶¶ 128, 139.)  As they did in the

21   SAC, Plaintiffs allege that Mr. Ley controlled Harmonic.  (TAC ¶ 138.)

22         Plaintiffs' amendment to their claim against Harmonic fails for two reasons.  First,

23   Plaintiffs allege that Harmonic was a primary violator (TAC ¶¶ 126, 131, 135-37) and a control

24   person (TAC ¶¶ 129, 131, 137, 142) — but a defendant cannot be both a primary violator and a

25   control person. *See Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999).  In *Kalnit*, the

26   court dismissed the control person claims under the Exchange Act's counterpart to Section 15

27   against individual defendants who allegedly had engaged in conduct that subjected them to

28   primary liability. *Id.*  The *Kalnit* court held that a defendant could not be a primary violator and a

1    control person defendant.  *Id*.  The court concluded that "under plaintiff's own theory," the

2    defendants "could not be control persons," "Section 20(a) does not apply," and it dismissed the

3    Section 20(a) claim "as a matter of law pursuant to Rule 12(b)(6)."  *Id.*  Plaintiffs here are doing

4    exactly what the *Kalnit* plaintiffs tried to do:  plead primary and control claims against the same

5    actor.  *Kalnit* demonstrates that this is not allowed.  *See also In re Capstead Mortgage Corp.*

6    *Secs. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003).

7         The second reason the Section 15 claim against Harmonic fails is that Harmonic allegedly

8    controlled Mr. Ley and Mr. Dickson and was in turn controlled by them.  (TAC ¶¶ 127-29, 138-

9    40.)  Plaintiffs allege that Harmonic controlled Mr. Ley and Mr. Dickson; that Mr. Ley controlled

10   Harmonic; and that Mr. Dickson controlled Harmonic.  An actor cannot simultaneously be both a

11   controlled and a controlling person.  *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 891 (3d Cir.

12   1975); *In re Regal Commc'ns Corp. Sec. Litig.*, Master File No. 94-179, 1996 U.S. Dist. LEXIS

13   10287, at *14 (E.D. Pa. July 17, 1996).

14        The Section 15 claim against Mr. Ley and Mr. Dickson fails for the same two reasons.

15   Plaintiffs allege these Defendants are primary violators and control persons, and that they

16   controlled others and were simultaneously controlled by others.  (TAC ¶¶ 127-29, 138-40.)

17        For these reasons, the Section 15 claim against all Defendants should be dismissed.

**II.    PLAINTIFFS DO NOT STATE A SECTION 12(a)(2) CLAIM
         AGAINST THE INDIVIDUAL DEFENDANTS.**

20        The TAC adds a Section 12(a)(2) claim against Mr. Dickson (Harmonic's CFO) and

21   against current or former Harmonic directors Nazarathy, Kvamme, Lane, Lemieux, and Vaillaud.

22   Mr. Ley remains a defendant to the Section 12(a)(2) claim.  The Section 12(a)(2) allegations fail

23   to establish that any of these Individual Defendants were "sellers" against whom a

24   Section 12(a)(2) claim may be asserted.  The Section 12(a)(2) claim against all Individual

25   Defendants, therefore, should be dismissed.

**A.    Only "Sellers" May Be Sued Under Section 12(a)(2).**

27        Section 12(a)(2) defines who may be sued under that statute:

28

1

2
> Any person who *offers or sells* a security … by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they made, not misleading … shall be liable … to the person purchasing such security from him …."

3

4

5
15 U.S.C. § 77l(a)(2) (emphasis added).

6
This Court has held in this case that, "[t]o establish liability under § 12(a)(2), plaintiffs

7
must allege that the defendants actively solicited purchase of the securities for 'their own

8
financial motives.'"  (July 5, 2001 Order at 8 (quoting *Stratosphere,* 1 F. Supp. 2d 1096, 1120 (D.

9
Nev. 1998).)  In *Pinter v. Dahl,* 486 U.S. 622 (1988), the Supreme Court held that the "offers or

10
sells" language in Section 12(a)(2) applies to persons who pass title to the securities in question,

11
as well as, those "who engage[] in solicitation" of the securities purchases can be Section 12(a)(2)

12
"sellers."  *Id.* at 643.  The Supreme Court held that Section 12(a)(2) does not impose liability "for

13
mere participation in unlawful sales transactions" or on "participants collateral to the offer or

14
sale."  *Id.* at 650; *see also id.* at 651 n.27 (rejecting SEC's suggestion in *amicus* brief that

15
"persons who 'participate in soliciting the purchase' may be liable as [Section 12(a)(2)]

16
sellers.").[3]

17
In an opinion published while this case was on appeal, the Ninth Circuit likewise held that

18
Section 12(a)(2) requires a "plaintiff must allege that the defendants did more than simply urge

19
another to purchase a security; rather, the plaintiff must show that the defendants solicited

20
purchase of the securities for their own financial gain."  *In re Daou Sys., Inc. Sec. Litig*., 411 F.3d

21
1006, 1029 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006).  In *Daou*, the Ninth Circuit

22
remanded a Section 12(a)(2) claim to the district court to determine whether the defendants "were

23
'directly involved' in the actual solicitation of a securities purchase."  *Id.*

24

25

26
_____

[3] *Pinter* addressed identical "offers or sells" language from a different subsection of Section 12.  The Ninth Circuit has extended *Pinter*'s holding to claims under Section 12(a)(2). *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536 (9th Cir. 1989).

27

28

1   In sum, where the individual did not pass title to a security, a Section 12(a)(2) claim can

2   be brought only against an individual who is alleged to have been an active and direct solicitor of

3   a securities purchase.   That is not the case alleged here.

4   **B.   Plaintiffs Do Not Allege That The Individual Defendants Were "Sellers."**

5

6   Plaintiffs fail to allege that the Individual Defendants "actively solicited purchase of the

7   securities for 'their own financial motives.'"  (*See* July 5, 2001 Order at 8.)  The TAC alleges that

8   Messrs. Ley and Dickson signed the Prospectus and that Messrs. Nazarathy, Kvamme, Lane,

9   Lemieux, and Vaillaud "ordered the Prospectus to be signed."  (TAC ¶¶ 137, 139.)  The TAC

10  alleges that all Defendants "actively and jointly caused to be drafted, revised and approved the

11  Prospectus, finalized it and caused it to become effective" and "solicited proxies by means of the

12  Prospectus which was mailed to C-Cube shareholders, by permitting the use of their names in the

13  Prospectus, by recommending in the Prospectus that C-Cube shareholders approve the merger,

14  and/or by controlling the remaining defendants as alleged with respect to Harmonic, Ley and/or

15  Dickson." (TAC ¶¶ 135-36.)  Plaintiffs do not allege that any of the Individual Defendants sold

16  Harmonic stock, let alone any of the Harmonic shares that Plaintiffs obtained in the merger.

17  On point is the Southern District of California's decision on remand in *In re Daou Sys.,*

18  *Inc. Sec. Litig.*, Civil No. 98-CV-1537-L (S.D. Cal. May 10, 2006), which held that allegations

19  nearly identical to the ones here failed to state a Section 12(a)(2) claim.  Like Plaintiffs here, the

20  *Daou* plaintiffs alleged that the defendants "actively and jointly drafted, revised, and approved the

21  Prospectus" and that "[b]ut for the participation by these defendants …, the wrongful conduct

22  alleged herein could not and would not have been accomplished."  (*Compare* slip op. at 11-12

23  *with* TAC ¶ 135.)  Quoting *Pinter*, the Southern District noted that "the term 'solicitation' is a

24  legal term of art in this context" and that courts need not accept as true a complaint's legal

25  conclusions.  Slip op. at 12.  The district court also cited the Supreme Court's rejection in *Pinter*

26  of the argument that a defendant was a Section 12(a)(2) seller just because he or she was a

27  "substantial factor" in bringing about the sale.  *Id*.

28

1    The Southern District held that "refusing to hold defendants liable for preparing and/or

2    signing the registration [statement] and prospectus comports with *Pinter*'s holding."  Slip op. at

3    12.  The Southern District stated that a contrary result would erase the "critical distinction" that

4    *Pinter* drew between the statutory language of "Section 11, which expressly imposes liability on

5    any individual who signs a false or misleading registration statement, … and Section 12, which

6    imposes liability only on an individual who 'offers or sells' a security."  *Id.* at 13 (quoting *Cent.*

7    *Laborers Pension Fund v. Merix Corp.,* No. CV 04-826-MO, 2005 WL 2244072, at *7 (D. Or.

8    Sept. 15, 2005)).  In short, much more than preparing or signing a prospectus is needed for an

9    individual to be a Section 12(a)(2) seller.  *See Central Laborers*, 2005 WL 2244072, at *8

10   (following "the weight of the authority finding that merely signing a prospectus does not qualify"

11   as solicitation).[4]

12   For these reasons, Plaintiffs do not state a Section 12(a)(2) claim against any Individual

13   Defendant.

14   **III.    THE STATEMENT OF OPINION REGARDING THE "BEST**
          **INTERESTS" OF C-CUBE SHAREHOLDERS CANNOT BE A**
15        **BASIS FOR ANY CLAIM.**

16   Among the allegations underlying the Section 11 and Section 12(a)(2) claims is the

17   allegation that "[i]n the Registration Statement, under their respective '[n]otice of Special

18   Meeting of Stockholders,' the Boards each stated … that each Board had unanimously

19   determined prior to the announcement of the merger that 'the merger is in the best interests' of

20   their stockholders….  The statement that the merger was in the best interests of the C-Cube

---

21        [4] Multiple cases have held that alleging a defendant who did not pass title to shares but
          signed or participated in preparing a misleading prospectus does not allege solicitation under
22        Section 12(a)(2).  *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (solicitation
          requires defendant to "directly communicate" with buyer); *Shaw v. Digital Equip. Corp.*, 82 F.3d
23        1194, 1216 (1st Cir. 1996); *Central Laborers*, 2005 WL 2244072, at *7; *In re DDI Corp. Sec.*
          *Litig.*, Nos. CV 03-7063 NM, CV 03-7883, CV 03-7999, CV 03-8344, CV 04-0735, 2005 WL
24        3090882, at *18 (C.D. Cal. July 21, 2005); *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d
          1080, 1101-02 (C.D. Cal. 2003) (dismissing claims absent allegations defendants "personally or
25        directly solicited" the plaintiffs); *In re Stratosphere Corp. Sec. Litig.,* 1 F. Supp. 2d 1096, 1120
          (D. Nev. 1998); *see also* Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7.2
26        at 579 (5th ed. 2005) ("Even substantial involvement in the preparation of registration and
          offering materials will not create liability unless there is also active involvement in the
27        negotiations leading to the sale in question.").

28

1  stockholders was false and misleading." (TAC ¶ 91; *see also id.* ¶ 92.) This allegation is new to

2  the claims under Sections 11 and 12(a)(2), but repeats a dismissed Section 14 claim. (*See* SAC ¶

3  127.) The Ninth Circuit affirmed this Court's dismissal of Plaintiffs' Section 14 claim, which

4  was based on the "statements that the merger was 'in the best interests of the [C-Cube]

5  stockholders.'" (November 8, 2005 Order at 16.) This allegation cannot be a basis for the

6  remaining claims for the following reasons.

7      First, the "best interests" statement represented a determination by the C-Cube Board of

8  Directors. Harmonic and its Board did not make a fairness representation to C-Cube

9  shareholders — only to Harmonic shareholders. (*See* TAC ¶ 91 (alleging that "each" Board had

10  determined the merger was in the best interests "of their stockholders").) For this reason alone,

11  Plaintiffs cannot base their Securities Act claims on this allegation. *See Kane v. Madge Networks*

12  *N.V.*, No. C-96-20652-RMW, 2000 U.S. Dist. LEXIS 19984, at \*39-\*40 (N.D. Cal. May 26,

13  2000) (dismissing Section 11 claim where *defendant* company "did not make any representations

14  of fairness" to shareholders of *other* companies involved in merger).

15      Second, Plaintiffs fail to plead that the C-Cube Board did not sincerely believe its fairness

16  opinion, or that any Defendant did not believe the C-Cube Board sincerely held this opinion. The

17  Ninth Circuit held in this case that the "best interests" statement is an "expression[] of opinion."

18  (Nov. 8, 2005 Order at 16 (citing *McKesson*, 126 F. Supp. 2d 1248 at 1265)); *see also*

19  *Freedman v. Value Health, Inc*., 135 F. Supp. 2d 317, 337 (D. Conn. 2001). An opinion, as

20  opposed to a statement of fact, is actionable only if the plaintiff alleges that the opinion was "*both*

21  objectively and subjectively false." (Nov. 8, 2005 Order at 16 (citing *Virginia Bankshares, Inc. v.*

22  *Sandberg*, 501 U.S. 1083, 1095-96 (1991) (emphasis added)); *see also McKesson*, 126 F. Supp.

23  2d at 1265 ("While material statements of fact are false if they are contradicted by true facts,

24  material statements of opinion are false only if the opinion was not sincerely held.").

25      Even if one assumes that Plaintiffs' allegations of AT&T and DiviCom sales declines are

26  enough to plead that the C-Cube Board's opinion was objectively incorrect, Plaintiffs allege no

27  facts showing that C-Cube's Board did not sincerely believe that the merger was 'in the best

28  interests' at the time they made the recommendation." (Nov. 8, 2005 Order at 16.) The decision

1   in *Gollomp v. MNC Financial, Inc.*, 756 F. Supp. 228 (D. Md. 1991), illustrates why Plaintiffs'

2   claim fails for lack of allegations showing the C-Cube Board did not hold its stated opinion.  The

3   *Gollomp* court dismissed Sections 11, 12, and 14 claims based on statements "that the merger was

4   fair, in the best interest of the stockholders of each bank and a positive step for each institution"

5   because the plaintiffs had "not identified a single fact demonstrating or suggesting that the boards

6   did not hold the views which were stated."  *Id.* at 233.

7          Judge Whyte in this district reached the same conclusion in dismissing a Section 11 claim,

8   holding, "Moreover, defendants are correct that plaintiffs fail to plead facts showing that the

9   board of Madge did not believe in the truth of its fairness opinion."  *Kane*, 2000 U.S. Dist. LEXIS

10  19984, at *40 n.16.  Plaintiffs likewise have failed to plead facts showing that C-Cube's Board

11  did not believe in its opinion, or that Defendants did not believe the C-Cube Board held this

12  opinion.

13         For these reasons, the C-Cube Board's "best interests" statement of opinion cannot be a

14  basis of a Section 11 or Section 12(a)(2) claim.

15  **IV.    "BACKGROUND" ALLEGATIONS THAT HAVE BEEN HELD**
    **NOT TO STATE AN EXCHANGE ACT CLAIM AND THAT ARE**
16  **NOT ACTIONABLE UNDER THE SECURITIES ACT SHOULD BE**
    **DISMISSED OR STRICKEN.**
17

18         Plaintiffs' Sections 11 and 12(a)(2) claims rest solely on the Registration Statement or

19  Prospectus, respectively, yet the TAC includes allegations regarding press releases, analyst

20  reports, and other events — including releases and reports that were published after the

21  Registration Statement and Prospectus were issued.  (*See generally* TAC § IV, "Factual

22  Background to the Registration and Issuance of Harmonic Shares," ¶¶ 45-83.)  At least 31 of

23  these allegations come from the SAC's now-dismissed Exchange Act claims.  (TAC ¶¶ 45-56, 67-

24  70, 74-76, 80, 82.)

25         Plaintiffs repeatedly suggest that these statements created a false impression and failed to

26  report known negative information.  Plaintiffs allege Defendants "did not inform analysts and

27  investors" of slowing sales at AT&T and DiviCom.  (TAC ¶ 46.)  Plaintiffs allege that

28  Harmonic's press releases, conference calls, presentations to analysts, and SEC filings created an

DEFENDANTS' MOTION TO DISMISS                     11
THIRD CONSOLIDATED AMENDED COMPLAINT — MASTER FILE NO. C-00-2287-PJH
sf-2150502

1    incorrect "understanding" among investors of "business conditions at Harmonic and DiviCom"

2    and "failed to disclose" negative information regarding AT&T and DiviCom.  (TAC ¶¶ 45-56.)

3    Plaintiffs allege that Harmonic and C-Cube increased the number of positive press releases about

4    DiviCom while they were failing to disclose negative information.  (TAC ¶ 56.)   Plaintiffs allege

5    that Harmonic "made numerous public statements" after it filed the Registration Statement, but

6    "failed to mention" declines in sales to AT&T and revised how it reported those sales.  (TAC ¶¶

7    67-74.)  Plaintiffs also allege that Harmonic issued a higher than normal amount of press releases

8    with positive news about DiviCom between the filing of the Registration Statement and the

9    shareholder vote.  (TAC ¶ 76.)   Plaintiffs refer to these statements as the "backdrop of

10    information … available to investors … at the time the Registration Statement was issued."

11    (TAC ¶ 83.)

12        Plaintiffs' labeling of allegations regarding press releases, analyst reports, and conference

13    calls as "background" is simply an attempt to have dismissed Exchange Act allegations included

14    in this Securities Act case in spirit if not in letter.  Plaintiffs no longer have Exchange Act claims,

15    and must proceed only on Securities Act claims.  In this case, the Sections 11 and 12(a)(2) claims

16    are based solely on the Registration Statement and Prospectus.  Plaintiffs' allegations regarding

17    press releases, analyst reports, and statements anywhere but in the Registration Statement and

18    Prospectus should be dismissed or stricken.[5]

19        The Ninth Circuit has rejected the exact tactic Plaintiffs are employing here.  In *Fantasy,*

20    *Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994), the

21    Ninth Circuit affirmed the district court's striking of allegations that had been previously

22    dismissed, but were realleged as "relevant background and foundational facts."  *Id.* at 1527-28.

23    Among other things, the Ninth Circuit held that the allegations would be burdensome on the

24    opposing party to answer and would lead to unwarranted and prejudicial inferences.  *Id.* at 1528.

25

26

27        [5] Under Rule 12(f), a court may strike portions of a pleading that are "redundant, immaterial, impertinent or scandalous."  Fed. R. Civ. Proc. 12(f).

28

1    Similarly, in *CogniTest Corp. v. The Riverside Publishing Co.*, 94 C 4741, 1995 U.S. Dist.

2    LEXIS 8721 (N.D. Ill. June 21, 1995), the court had dismissed the plaintiff's earlier claims for

3    breach of contract, but allowed the plaintiff to proceed on other claims.  The plaintiff's amended

4    complaint did not allege breach of contract claims as "formal counts," but "virtually retained the

5    full text of those claims" in the "General Allegations" section of the complaint.  *Id.* at *11-*12.

6    The court granted the defendant's motion to strike the allegations, finding them to "venture far

7    beyond the setting out of background information."  *Id.* at *12.  In *Paul M. Harrod Co. v. A.B.*

8    *Dick Co.*, 194 F. Supp. 502 (N.D. Ohio 1961), the district court granted a motion to strike

9    allegations from dismissed claims because the allegations "are immaterial and would be

10   prejudicial to the defendant were they permitted to remain in the complaint."  *Id.* at 504.  The

11   court rejected the plaintiffs' assertion that these paragraphs were "pertinent as background" to the

12   remaining charges.  *Id.*; *see also Neilson v. Union Bank of Cal. N.A.*, 290 F. Supp. 2d 1101, 1152-

13   53 (C.D. Cal. 2003) (striking as prejudicial and immaterial allegations offered as "context").

14   Defendants should not have to answer multiple paragraphs of "background" allegations,

15   or have to respond to discovery regarding warmed-over allegations that have been dismissed with

16   prejudice.  Moreover, Plaintiffs avoided the application of Rule 9(b)'s higher pleading standards

17   to their Securities Act claims by purporting to *separate* the Exchange Act allegations of fraud

18   from their Securities Act claims.  (SAC at 1 (noting the Securities Act claims "are predicated on a

19   Registration Statement" and because they "are ***not*** based upon fraud, these Claims are separate

20   from and do not incorporate the allegations of" the Section 10(b) claim) (emphasis in original).)

21   The Ninth Circuit concluded that the Securities Act claims do not sound in fraud — citing

22   Plaintiffs' separation of the Exchange Act and Securities Act allegations.  (*See* November 8, 2005

23   Order at 18-19.)  Plaintiffs should not be allowed now to erase or blur the separation between the

24   dismissed Exchange Act claims and the Securities Act claims.

25   For these reasons, paragraphs 45-56, 67-70, 74-76, 80, and 82 should be dismissed from

26   the TAC, or stricken, or both.

27

28

1

## V.   CONCLUSION

2       For the reasons stated above, Defendants' motion should be granted, without further leave

3   to amend.

4                               Respectfully submitted,

5   Dated: June 23, 2006          MELVIN R. GOLDMAN
                      TERRI GARLAND

6                         D. ANTHONY RODRIGUEZ
                      MARGARET L. WU

7                         MORRISON & FOERSTER LLP

8

9                     By:  //s// D. Anthony Rodriguez

10                             D. Anthony Rodriguez

11                       Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28