United States District Court
For the Northern District of California

1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7            NORTHERN DISTRICT OF CALIFORNIA
8
9
10
11
12   In re HARMONIC, INC., SECURITIES
     LITIGATION
                                           No. C 00-2287 PJH
13   _____

14   THIS ORDER REFERS TO:                 **ORDER GRANTING MOTION
     ALL ACTIONS                           TO DISMISS IN PART AND
15   _____/      DENYING IT IN PART**

16        Before the court is defendants' motion to dismiss certain claims alleged in the third

17   amended complaint.  Having read the parties' papers and carefully considered their

18   arguments and the relevant legal authority, and good cause appearing, the court GRANTS

19   the motion in part and DENIES it in part.

20                                **INTRODUCTION**

21        This is a proposed class action alleging violation of federal securities laws.  Plaintiffs

22   filed suit against Harmonic, Inc. ("Harmonic"), C-Cube Microsystems, Inc. ("Old C-Cube"),

23   and a number of their top executives, following a decline in stock price of both Harmonic

24   and Old C-Cube shortly after the May 3, 2000, merger between Harmonic and a division of

25   Old C-Cube.  Plaintiffs alleged claims under the 1934 Securities Exchange Act, against

26   both the Harmonic defendants and the C-Cube defendants, and under the 1933 Securities

27   Act, against the Harmonic defendants only.

28        On November 13, 2003, this court dismissed the second amended complaint

United States District Court

For the Northern District of California

1  ("SAC") without leave to amend.  On November 8, 2005, the Ninth Circuit affirmed the

2  dismissal of the claims under the 1934 Securities Exchange Act (thereby affirming the

3  dismissal of all C-Cube defendants from the case); and reversed the dismissal of the 1933

4  Securities Act claims, with the exception of the § 15 claim against Harmonic, as to which it

5  granted leave to amend.

6        On May 17, 2006, plaintiffs filed the third amended complaint ("TAC"), in which they

7  amended the § 15 claim against Harmonic, added a new § 15 defendant, and amended the

8  § 12(a)(2) claim to add new defendants and new allegations of material omissions.  In

9  addition, the TAC retained as "background" many of the allegations that had previously

10  been used to support plaintiffs' claims under the 1934 Securities Exchange Act.

11        Defendants now move to dismiss the revised § 12(a)(2) claim, and the revised

12  § 15 claim, and also seek an order striking the allegations against the new defendants in

13  those claims, as well as the "background" allegations pertaining to the dismissed Exchange

14  Act claims.

15                                    **BACKGROUND**

16        On October 27, 1999, Harmonic and Old C-Cube announced that Harmonic would

17  merge with DiviCom, Inc. ("DiviCom" – a division of Old C-Cube), by acquiring C-Cube after

18  C-Cube had spun off its non-DiviCom assets.  On March 23, 2000, Harmonic filed a Form

19  S-4 Registration Statement for the issuance of 25,371,225 shares of Harmonic common

20  stock.  Included with the registration statement was a Harmonic and C-Cube joint proxy

21  statement (seeking shareholder approval of the merger and an increase in the authorized

22  shares of Harmonic stock) and prospectus (relating to the issuance of Harmonic stock to

23  the former C-Cube shareholders).  On April 24, 2000, the shareholders of both companies

24  voted to approve the merger.  On May 3, 2000, the merger was completed.  Pursuant to the

25  merger, Harmonic acquired DiviCom, and Old C-Cube ceased to exist.[1]

26        Twelve days after the completion of the merger, on May 15, 2000, Harmonic filed a

27  ───────────────────

28        [1]  The remaining entity was renamed C-Cube Semiconductor, Inc., which was later
renamed C-Cube Microsystems, Inc. ("New C-Cube").

United States District Court
For the Northern District of California

1   Form 10-Q with the SEC reporting that, for the first quarter of 2000 – when DiviCom had

2   still been a C-Cube subsidiary – DiviCom's income had declined from the first quarter of

3   1999, while DiviCom's revenues had increased only 3%.  On June 26, 2000, Harmonic

4   announced preliminary results for the second quarter of 2000, which plaintiffs claim were

5   approximately half the amount previously forecast by defendants.

6        On June 28, 2000, plaintiffs filed suit, asserting claims under the 1934 Securities

7   Exchange Act against Harmonic and C-Cube defendants, and claims under the 1933

8   Securities Act against Harmonic defendants only.  Plaintiffs alleged that Harmonic,

9   C-Cube, and several of their executives had made false and misleading statements about

10  Harmonic's past financial performance and its future prospects – in particular about

11  Harmonic's sales to AT&T, one of its largest customers.  Plaintiffs also claimed that

12  defendants had misrepresented DiviCom's financial condition by failing to report that

13  DiviCom's sales had declined after the merger announcement, which led to customer

14  concerns about how the merger would affect them.  Plaintiffs asserted that defendants'

15  purpose in making these statements was to obtain shareholder approval of Harmonic's

16  acquisition of DiviCom, while the defendants engaged in insider selling.

17       The court dismissed the first amended complaint for failure to state a claim, with

18  leave to amend, and plaintiffs filed the SAC on August 13, 2001.  The SAC asserted the

19  same Exchange Act claims against the same Harmonic and C-Cube defendants.  The SAC

20  also alleged claims under §§ 11(a), 12(a)(2), and 15 of the Securities Act against the

21  Harmonic defendants.  The § 11(a) claim was asserted against Harmonic and seven

22  Harmonic executives – Anthony Ley, Robin Dickson, Moshe Nazerathy, Floyd Kvamme,

23  David Lane, Barry Lemieux, and Michel Vaillaud.  The § 12(a)(2) claim and the §15 control

24  person claim were asserted against Harmonic and Ley only.

25       On November 13, 2002, this court dismissed the SAC without leave to amend.  The

26  Exchange Act claims were dismissed for failure to plead falsity and scienter with

27  particularity, as required by the Private Securities Litigation Reform Act (PSLRA) and

28  Federal Rule of Civil Procedure 9(b).  The Securities Act claims were dismissed on the

3

United States District Court
For the Northern District of California

1  basis that they were grounded in fraud, and that plaintiffs had failed to allege fraud with

2  particularity.  The control-person claims were dismissed on the basis that the plaintiffs had

3  failed to plead the primary violations.

4     Plaintiffs filed a motion to amend the judgment – in essence a motion for

5  reconsideration of the order denying leave to amend.  That motion was denied.

6     Both sides appealed, and the Ninth Circuit affirmed the dismissal of the Exchange

7  Act claims, but reversed the dismissal of the § 11 and § 12(a)(2) claims, finding that those

8  claims were not grounded in fraud because plaintiffs had alleged a basis for § 11 liability

9  other than fraud – i.e., the omission of a material fact from the registration statement – and

10  had adequately pleaded a violation of § 12(a)(2) by alleging that defendants negligently

11  omitted material facts from the prospectus.  See Knollenberg v. Harmonic, Inc., 152 Fed.

12  Appx. 674, 684 (9th Cir. 2005).

13     The Ninth Circuit also reversed the dismissal of the § 15 claim as to Ley, finding that

14  plaintiffs had adequately stated a claim by alleging Ley's position as president, CEO, and

15  Chairman of the Board of Harmonic; and alleging that Ley had signed the registration

16  statement, and jointly with his co-defendants, actively caused the prospectus to be drafted,

17  revised, and approved.  Id. at 685.  The court affirmed the dismissal of the § 15 claim

18  against Harmonic, noting that it rested on allegations that Harmonic exerted control over

19  itself, but stated that plaintiffs "might be able to" amend the complaint so as to "cure th[e]

20  defect."  Id.

21     Both sides filed petitions for rehearing, which were denied by the Ninth Circuit

22  without comment on February 16, 2006.

23     On May 17, 2006, plaintiffs filed the TAC, in which they amended the § 15 claim

24  against Harmonic, but also added a new "control-person" defendant (Harmonic executive

25  Dickson).  The TAC alleges that Ley controlled Harmonic, by virtue of his positions as

26  president, CEO, and Chairman of the Board; that Dickson controlled Harmonic, by virtue of

27  his position as CFO; and that Harmonic controlled both Ley and Dickson in its capacity as

28  their employer.

4

United States District Court

For the Northern District of California

1      Plaintiffs also amended the § 12(a)(2) claim to add six defendants – Harmonic

2   executives Dickson, Nazerathy, Kvamme, Lane, Lemieux, and Vaillaud.[2]  In addition, the

3   TAC alleges a third false or misleading statement in the registration statement.  The first

4   two allegedly misleading statements are (1) the statement that "[m]ore recently, Harmonic's

5   sales to AT&T has [sic] accounted for an increasingly significant portion of its historic net

6   sales," which plaintiffs claim was misleading because it omitted to state that Harmonic's

7   sales to AT&T had fallen in the last quarter of 1999; and (2) the "hypothetical statement"

8   about a concentration of Harmonic's and DiviCom's customer base and the negative effect

9   that a loss of a key customer would have on the combined company following the merger,

10  which plaintiffs claim was misleading because it omitted to state either that AT&T's sales

11  had declined, or that DiviCom's sales had declined shortly after the October 1999 merger

12  announcement, and that DiviCom's largest customers had openly expressed serious

13  concerns regarding the effect of the merger on those customers' operations.

14      The third allegedly misleading statement is the statement in the joint proxy

15  statement/prospectus that each company's Board of Directors had unanimously determined

16  prior to the announcement of the merger that "the merger is in the best interests" of their

17  respective shareholders.[3]  The TAC asserts that this statement was false and misleading

18  as to the C-Cube shareholders because unbeknownst to those shareholders, they would be

19  acquiring shares in a company that was already experiencing a sharp decline in its sales to

20  AT&T; and also because DiviCom was already experiencing a dramatic downturn in growth

21  as a result of three key customers withdrawing orders in response to the merger.

22      In addition, the TAC retains as "background" many of the allegations that plaintiffs

23  previously used to support their claims under the Exchange Act – e.g., allegations of

24  misleading statements in press releases, analyst reports, and other public statements.

25  _____

26      [2]  It is not entirely clear whether the TAC alleges the § 12(a)(2) claim directly against
    Dickson.

27      [3]  In the SAC, this statement was alleged to be misleading in violation of § 14(a) of the
28  Exchange Act (prohibiting the inclusion of false or misleading statements in proxy statements
    or solicitations), not in violation of the Securities Act.  The § 14(a) claim was dismissed.

**DISCUSSION**

A.     Legal Standards

1.     Motions to Dismiss for Failure to State A Claim

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Williamson v. Gen'l Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.), cert. denied, 531 U.S. 929 (2000). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

Review is generally limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). However, material that is properly presented to the court as part of the complaint may be considered as part of a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). In addition, whether requested or not, the court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. See Fed. R. Evid. 201; see also In re Silicon Graphics, Inc., Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

2.     Motions to Strike

Federal Rule of Civil Procedure 12(f) allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal.1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id.

6

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

B.     The 1933 Securities Act

The 1933 Securities Act prohibits the public sale of securities without a registration statement, or pursuant to a registration statement or a prospectus containing a materially false statement.  The Securities Act consists of 26 sections and 2 schedules.  Section 2 defines the important terms used in the Act.  15 U.S.C. § 77b.  A "registration statement" is "the statement provided for in [§ 6 of the Act] and includes any amendments thereto and any report, document, or memorandum filed as part of such statement or incorporated therein by reference."  Id. § 77b(8).  A "prospectus" is "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security . . . " with two exceptions, not significant here.  Id. § 77b(10).  The Supreme Court has described "prospectus" as "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder."  Gustafson v. Alloyd Co., 513 U.S. 561, 584 (1995).

Section 6 describes the procedure for registering a security, and section 7 and the two accompanying schedules detail the information required in the registration statement.  15 U.S.C. §§ 77f, 77g, 77aa.  Section 11 provides civil penalties for providing false information in any part of the registration statement – describing who may be sued, the shifting burdens of proof, the standard of negligence, and the calculation of damages.  Id. § 77k.  Section 10 lists the information required in the prospectus.  Id. § 77j.  Section 12 provides for civil liability for selling a security without an effective registration statement, or for providing false information in a "prospectus or oral communication."  Id. § 77l.

C.     Defendants' Motion

1.     Section 15 Claim

Defendants argue that the § 15 claim against Harmonic, Ley, and Dickson should be dismissed for failure to plead control-person liability.  Section 15 imposes joint and several liability upon every person who controls any person liable under § 11 or § 12.  15 U.S.C. § 77o.  To establish a prima facie case of control-person liability, a plaintiff must prove a primary violation of the federal securities laws, and that the defendant exercised actual

7

United States District Court

For the Northern District of California

1   power or control over the primary violator.  Howard v. Everex Sys., Inc., 228 F.3d 1057,

2   1065 (9th Cir. 2000).

3       Although § 15 is not identical to § 20 of the 1934 Exchange Act, the "controlling

4   person" analysis is the same.  Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1578 (9th

5   Cir. 1990).  The statute does not define "control," but the SEC has defined it to mean "the

6   possession, direct or indirect, or the power to direct or cause the direction of the

7   management and policies of a person, whether through ownership of voting securities, by

8   contract, or otherwise."  17 C.F.R. § 230.405.

9       "In general, the determination of who is a controlling person . . . is an intensely

10  factual question."  Arthur Children's Trust v. Keim, 994 F.2d 1390, 1396 (9th Cir. 1993).

11  Congress, in using the term "controlling person" intended to encompass all persons who

12  exerted actual control over someone who violated the securities laws.  Durham v. Kelly,

13  810 F.2d 1500, 1504 (9th Cir. 1987).  To establish that someone is a "controlling person"

14  the complainant must show that there was a relationship between the controlling and

15  controlled person and that actual power or influence was exerted over the alleged

16  controlled person.  Id. at 1503-04.

17      Defendants argue that the § 15 claim must be dismissed because a defendant

18  cannot be both a primary violator and a controlling person, as the TAC alleges with regard

19  to Harmonic, Ley, and Dickson.  They also contend that one defendant cannot both control

20  another defendant and be controlled by that defendant, as the TAC alleges – i.e., that

21  Harmonic controlled Ley and Dickson, and that Ley and Dickson controlled Harmonic.

22      In support of the argument that a defendant cannot be both a primary violator and a

23  controlling person, defendants cite Kalnit v. Eichler, 85 F.Supp. 2d 232 (S.D.N.Y. 1999) and

24  two cases that cite Kalnit – In re Capstead Mortgage Corp. Sec. Litig., 258 F.Supp. 2d 533

25  (N.D. Tex. 2003), and PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 697 n.4 (6th Cir.

26  2004).

27      In Kalnit, the plaintiff sued a corporation and its directors under § 10(b) and Rule

28  10b-5, and also sued the individual directors under § 20.  The district court dismissed the

8

United States District Court

For the Northern District of California

§ 20 claim because the plaintiff had not adequately alleged a primary violation. Kalnit, 85 F.Supp. 2d at 246. The court then stated that even had the plaintiff adequately alleged a primary violation, the § 20 claim against the individual directors would have failed because the directors were alleged to be primary violators (the first element required for the control-person claim) and "could not be control persons." Id.

In Capstead, the plaintiffs alleged § 20 claims against three defendants whom they had also named as primary violators under § 10(b) and Rule 10b-5. The district court first observed that "[a]rguably, a § 20(a) claim cannot be asserted against a defendant who is also charged with primary violation of § 10(b) and Rule 10b-5" because "secondary liability under § 20(a) is an alternative, not a supplement, to primary liability under § 10(a) and Rule 10b-5" (citing Lemmer v. Nu-Kote Holding, Inc., 2001 WL 1112577, at *12 (N.D. Tex., Sept. 6, 2001), which also relied on Kalnit). However, the court found that it "need not decide the issue," because the complaint failed to adequately plead a primary violation by the "controlled person." Capstead, 258 F.Supp. 2d at 566.

Similarly, in PR Diamonds, the Sixth Circuit stated, "Without deciding the question, we note that some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a) claims against the same defendant." 364 F.3d at 697 n.4 (citing Kalnit, Capstead, and Lemmer).

In opposition, plaintiffs argue that in ruling that plaintiffs stated a claim against Ley for control-person liability, and also stated a claim against him under § 11(a) and § 12(a)(2), the Ninth Circuit has already determined that a defendant in the present case can be alleged to be both a primary violator and a controlling person. In addition, plaintiffs assert that defendants waived this argument as to Harmonic and Ley by failing to raise it in their motion to dismiss the FAC or their motion to dismiss the SAC, or before the Ninth Circuit in their motion for reconsideration.

Plaintiffs also argue that Kalnit and Capstead are not persuasive authority, because the district courts in those cases first determined that the plaintiffs had failed to allege a primary violation, thereby eliminating any possibility of control-person liability. They argue,

United States District Court

For the Northern District of California

1    therefore, that the statements in those cases that a defendant cannot be both a primary

2    violator and a controlling person are dicta.

3          Plaintiffs cite a number of cases in which the courts have found claims adequately

4    asserted against a single defendant for violations of securities laws as both primary violator

5    and controlling person (e.g., In re Daou Sys., Inc., Sec. Litig, 411 F.3d 1006, 1029-30 (9th

6    Cir. 2005), cert. denied, 126 S.Ct. 1335 (2006); Nursing Home Pension Fund, Local 144 v.

7    Oracle Corp., 380 F.3d 1226, 1235 (9th Cir. 2004); No. 84 Employer-Teamster Joint

8    Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 937-46 (9th Cir.

9    2003); and  In re North Point Communications Group, Inc., Sec. Litig., 221 F.Supp. 2d

10   1090, 1105-06 (N.D. Cal. 2002)).  Plaintiffs also contend that in any event, alternative

11   theories of liability are proper at the pleading stage.

12         The court finds defendants' argument unpersuasive.  Their only support is the Kalnit

13   decision, as Capstead, Lemmer, and PR Diamonds all rely on Kalnit.  However, the Kalnit

14   decision plainly indicates that the control-person claim was dismissed because the

15   complaint failed to plead a primary violation.  Moreover, there appears to be no authority for

16   a rule that plaintiffs cannot plead that the same defendant is both the primary violator and a

17   controlling person.  While defendants are correct that none of the cases cited by plaintiffs

18   contain any analysis of whether a defendant can be both a primary violator and a

19   controlling person, plaintiffs are correct that the Ninth Circuit has allowed cases to go

20   forward where the plaintiffs have alleged that a defendant is both a primary violator and a

21   controlling person.

22         For example, in America West, the plaintiffs sued the corporation, its officers and

23   directors, and two of its largest shareholders (TPG and Continental) under the 1934

24   Securities Exchange Act.  The district court dismissed the case for failure to comply with

25   the requirements of the PSLRA.  The Ninth Circuit reversed, finding that the plaintiffs had

26   adequately alleged § 10(b) and Rule 10b-5 claims against all the defendants, including

27   TPG and Continental; and had also adequately alleged control-person claims against TPG

28   and Continental.  America West, 320 F.3d at 937-46.

United States District Court

For the Northern District of California

1    This court is more persuaded by the fact that the Ninth Circuit allowed the plaintiff to

2  allege claims of both primary violations and control-person violations against TPG and

3  Continental in the America West case than it is by the comments of the district judge in

4  Kalnit, particularly given that her comments are dicta.

5    In their second argument, defendants assert that the § 15 claim against Harmonic,

6  Ley, and Dickson should be dismissed because Harmonic cannot both control Ley and

7  Dickson and be controlled by Ley and Dickson, as the TAC alleges.  In support, defendants

8  cite Rochez Bros. Inc. v. Rhoades, 527 F.2d 880 (3d Cir. 1975); and In re Regal

9  Communications Corp. Sec. Litig., 1996 WL 411654 (E.D. Pa., July 17, 1996).

10    In Rochez, the plaintiff alleged claims under Rule 10b-5 against a corporation and

11  its president, and also asserted a § 20 control-person claim against the corporation.  The

12  Third Circuit held that the corporation could not be liable as a controlling person in the

13  absence of any culpable participation in the alleged fraud.  Rochez, 527 F.2d at 889-90.

14  The court also concluded that the corporation's president was the controlling person,

15  because he ran the day-to-day business activities of the corporation, and had the power to

16  influence the policies and actions of the corporation.  Thus, the court stated, the plaintiff's

17  argument that the corporation was the controlling person "must . . . fail because [the

18  president] and [the corporation] cannot simultaneously be 'controlling persons' as to each

19  other."  Id. at 891.

20    In In re Regal, the plaintiffs alleged violations of § 10(b) and Rule 10b-5, and

21  violations of § 11, against the corporation's CEO and its CFO, and against Ernst & Young,

22  LLP ("E&Y"), the corporation's outside auditor.  The plaintiffs also alleged § 15 and § 20

23  control-person claims against E&Y.  The district court denied E&Y's motion for summary

24  judgment as to the Exchange Act claims and as to the § 11 claim, finding disputed issues of

25  fact as to both.  The court granted summary judgment as to the control-person claims,

26  stating that "[w]here, as here, the defendant is alleged to be primarily liable for violations of

27  the securities laws, it makes no sense to assert secondary liability under Sections 15 and

28  20(a).  A person cannot be both the controller and the controlled."  In re Regal, 1996 WL

11

United States District Court

For the Northern District of California

1   411654 at *3-4.

2       In opposition to the present motion, plaintiffs argue that in ruling that plaintiffs

3   adequately alleged that Harmonic was controlled by Ley, and that plaintiffs might be able to

4   allege that Harmonic controlled a primary violator, the Ninth Circuit has already determined

5   that a defendant can be alleged both to control another defendant and to be controlled by

6   that defendant.

7       Plaintiffs also contend that Rochez and In re Regal are distinguishable on the basis

8   that both were decided after discovery, when the plaintiffs were required to prove the

9   claims against the defendants – not simply plead facts stating a claim.  They assert that

10  cases such as Rochez and In re Regal, which decline to allow plaintiffs to recover on

11  alternative theories of liability, do not support defendants' argument here that plaintiffs

12  cannot, prior to discovery, plead alternative theories of liability.

13      The court finds that the motion to dismiss the § 15 claim against Ley must be

14  DENIED, as the Ninth Circuit has already found that plaintiffs have stated a control-person

15  claim against Ley.  The motion to dismiss the § 15 claim against Dickson is also DENIED,

16  because it is substantially similar to the claim against Ley.[4]  In line with the Ninth Circuit's

17  ruling with regard to Ley, the court finds that the TAC adequately states a § 15 claim

18  against Dickson.

19      The motion to dismiss the § 15 claim against Harmonic is also DENIED.  It is true

20

21      [4] Despite plaintiffs' having improperly failed to seek leave to amend to add the § 15
22  claim against Dickson, the court allows this claim to proceed, largely because plaintiffs would
    probably have been able to make the requisite showing if they had sought leave.  Plaintiffs
23  assert that it is not improper to amend a complaint to assert new claims against a defendant
    already in the case, citing Lucas v. Bechtel Corp., 800 F.2d 839, 852-53 (9th Cir. 1986).
24  However, there is no rule of law stated in the Lucas case that allows a plaintiff to amend a
    complaint without first obtaining leave of court, and there is not even a suggestion in the pages
25  plaintiffs cite that the court below had allowed amendment without leave of court.  Plaintiffs
    also argue that such amendment is proper where the new claims are based on the same facts
26  as the claims that were dismissed with leave to amend, citing Lucas, and Percy v. San
    Francisco Gen'l Hosp., 841 F.2d 975, 978 (9th Cir. 1988).  In Percy, the Ninth Circuit
27  discussed the "relation back" provision in Federal Rule 15(c), with regard to a request to
    amend the complaint to add a claim against an existing defendant.  Again, there is no
28  suggestion in that case that amendment is proper where the plaintiff has not obtained leave
    of court.

United States District Court

For the Northern District of California

1   that plaintiffs cite no cases supporting the imposition of liability on one defendant as the

2   person controlling a second defendant, and the imposition of liability on the second

3   defendant as the person controlling the first defendant.  Nor do they provide any

4   explanation as to how two defendants could simultaneously control each other.

5   Nevertheless, plaintiffs are correct that the cases cited by defendants involve motions for

6   summary judgment, not Rule 12(b)(6) motions to dismiss, and for that reason are not

7   persuasive in the context of the present motion.

8       A complaint may contain two or more statements of a claim for relief, "alternatively or

9   hypothetically, either in one count . . . or in separate counts."  Fed. R. Civ. P. 8(e)(2); see

10  also McCalden v. Calif. Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990).  Moreover, a

11  party may set forth as many separate claims "as he has regardless of consistency and

12  whether based on legal, equitable or maritime grounds . . . " provided that all such claims

13  are made in compliance with Rule 11.  Fed. R. Civ. P. 8(e)(2); see Molsbergen v. United

14  States, 757 F.2d 1016, 1018 n.3 (9th Cir. 1985) (plaintiff permitted to allege factually

15  inconsistent theories of recovery against same defendant for same injury – negligent act

16  and intentional act).

17      Although plaintiffs will likely be ultimately unable to establish that Harmonic both

18  controlled Ley and Dickson and was controlled by them, and will arguably not be able to

19  show that Harmonic was both controlling person and controlled person (though resolution

20  of that question may depend on plaintiffs' factual showing of "control" by Harmonic), the

21  allegations in the TAC are adequate to state a claim for control-person liability.

22      2.      Section 12(a)(2) Claim

23      Plaintiffs allege the § 12(a)(2) claim against Harmonic, Ley, Dickson, Nazerathy,

24  Kvamme, Lane, Lemieux, and Vaillaud, asserting that Harmonic and Ley signed the

25  prospectus, that Nazarathy, Kvamme, Lane, Lemieux, and Vaillaud "ordered the

26  [p]rospectus to be signed," and that "[e]ach defendant solicited proxies by means of the

27  [p]rospectus which was mailed to C-Cube shareholders, by permitting the use of their

28  names in the [p]rospectus, by recommending in the [p]rospectus that C-Cube shareholders

13

United States District Court

For the Northern District of California

1   approve the merger, and/or by controlling the remaining defendants as alleged with respect

2   to Harmonic, Ley and/or Dickson."  TAC ¶¶ 136-137.

3       Defendants argue that the § 12(a)(2) claims against the individual defendants

4   (including Ley) should be dismissed because the allegations in the TAC do not establish

5   that any of these defendants was a "seller" against whom § 12(a)(2) claim can be asserted.

6       Section 12(a)(2) provides that "[a]ny person who . . . offers or sells a security . . . by

7   means of a prospectus . . . which includes an untrue statement of material fact" or a

8   material omission "shall be liable . . . to the person purchasing such security from him."  15

9   U.S.C. § 77l(a)(2).  To state a claim under § 12(a)(2), plaintiffs must allege that the

10  prospectus contained a misrepresentation or omission, and that the misrepresentation or

11  omission was material.  See In re Stratosphere Corp. Sec. Litig., 1 F.Supp. 2d 1096, 1120

12  (D.Nev. 1998).  In addition, plaintiffs must also allege that the defendants were "sellers" –

13  that they did more than simply urge another person to purchase a security, and that they

14  solicited purchase of the securities for their own financial gain.  In re Daou, 411 F.3d at

15  1029.  Id.

16      In Pinter v. Dahl, 486 U.S. 622 (1988), the Supreme Court held that the "offers or

17  sells" language in § 12(a)(1) applies to two categories of defendants – persons who pass

18  title to the securities in question, and persons who "engage[ ] in solicitation" of securities

19  sales for financial gain, id. at 643, "motivated at least in part by a desire to serve [their] own

20  financial interests or those of the securities owner," id. at 647.  The Court held further that

21  § 12(a)(1) does not impose liability "for mere participation in unlawful sales transactions," or

22  on "participants collateral to the offer or sale."  Id. at 648-50 & 651 n.27.[5]

23      The Court rejected the use of the "substantial factor" standard to define who qualifies

24  _____

25      [5] Although it limited its ruling to § 12(a)(1) claims, the Court also noted that most courts
    treat the "offers or sells" language in § 12(a)(2) as having basically the same meaning as the
26  "offers or sells" language in § 12(a)(1) (which applies to "[a]ny person who . . . offers or sells
    a security in violation of section 77e," the provision that prohibits the sale of unregistered
27  securities.)  See Pinter, 486 U.S. at 642 n.20.  In Moore v. Kayport Package Express, Inc., 885
    F.2d 531 (9th Cir. 1989), the Ninth Circuit held that Pinter "provides the standard for
28  determining liability as a 'seller' under section 12(2) as well as under section 12(1) of the
    Securities Act of 1933."  Id. at 536.

14

United States District Court

For the Northern District of California

as a "seller" under § 12.  Under that standard, a nontransferor seller is defined as "one 'whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place.'"  Id. at 648-49 (citation omitted).  The Court concluded that such an approach "divorce[d] the analysis of seller status from any reference to the applicable statutory language and from any examination of § 12 in the context of the total statutory scheme."  Id. at 651.

In analyzing the text of § 12, the Court found that the "purchases from" requirement "focuses on the defendant's relationship with the plaintiff-purchaser," while the "substantial factor" test "focuses on the defendant's degree of involvement in the securities transaction and its surrounding circumstances."  Id.  Thus, the Court noted, while the "substantial factor" test properly brought into the scope of liability those who passed title or actively solicited the purchase, it could also improperly include those with only a remote involvement with the sales relationship.  Id.

Defendants argue that the claims against the individual defendants must be dismissed because the TAC does not allege that they actively "solicited" purchases of the securities for their own financial motives, as required by Pinter; and also does not allege that any of the individual defendants "sold" Harmonic stock or any of the Harmonic shares that plaintiffs obtained in the merger.

As indicated above, the TAC alleges that Ley signed the prospectus, and that Nazerathy, Kvamme, Lane, Lemieux, and Vaillaud did not sign the prospectus, but rather "ordered" it "to be signed."  Defendants argue that plaintiffs plead no facts showing solicitation, and assert that simply alleging that a defendant signed a registration statement or a prospectus provides an insufficient legal basis for relief under § 12(a)(2).  Defendants cite a number of cases in support of this argument, including Cent. Laborers Pension Fund v. Merix Corp., 2005 WL 2244072 at *6 (D. Or., Sept, 15, 2005) (dismissing § 12(a)(2) claim against two directors who signed prospectus, on ground that simply signing a registration statement or prospectus is an insufficient legal basis for relief under § 12(a)(2)); In re DDi Corp. Sec. Litig., 2005 WL 3090882 at *21 (C.D. Cal., July 21, 2005) (dismissing

United States District Court
For the Northern District of California

1  claims against corporate officers who signed registration statement and prospectus

2  because plaintiffs did not allege that officers actively solicited plaintiffs' purchase of

3  securities to further their own financial motives); In re Infonet Servs. Corp. Sec. Litig., 310

4  F.Supp. 2d 1080, 1101 (C.D. Cal., 2003) (same); and In re Stratosphere, 1 F.Supp. 2d at

5  1120-21 (finding allegation that defendants signed prospectus to be insufficient to satisfy

6  requirement that plaintiffs allege that defendants were "sellers").

7      In opposition, plaintiffs argue that they have adequately alleged liability for all

8  defendants under § 12(a)(2).  First, they contend that because the Ninth Circuit has already

9  found that plaintiffs adequately alleged a § 12(a)(2) claim against Ley and Harmonic,

10  defendants' motion is barred by the "law of the case."  They also argue that because the

11  Ninth Circuit did not find that plaintiffs were required to allege that Ley was a "seller," this

12  court cannot now revisit the claim as to Ley.  In a related argument, they submit that

13  because the Ninth Circuit found that the SAC adequately stated a § 12(a)(2) claim against

14  Ley, and did not require an allegation of facts showing that he was a "seller," this court

15  cannot now require such allegations with regard to the newly-added individual defendants.

16  Plaintiffs claim that to do so would be to apply a different standard to these new defendants

17  than the Ninth Circuit did to Ley.

18      Second, plaintiffs claim that Ley waived any argument that he must be dismissed if

19  the TAC does not allege that he was a "seller" of stock.  Plaintiffs maintain that the

20  argument that officers and directors who simply sign a prospectus are not statutory sellers

21  under § 12(a)(2) should have been raised before this court when the § 12(a)(2) claim was

22  first asserted against Ley; and that in failing to do so (or to make the argument in the

23  motion to dismiss the SAC or in the motion for rehearing before the Ninth Circuit),

24  defendants have waived the argument, at least as to Ley.

25      Third, plaintiffs contend that the TAC adequately alleges that the individual

26  defendants "solicited" the purchase of Harmonic's stock.  They assert that the C-Cube

27  shareholders purchased Harmonic stock directly from Harmonic pursuant to the prospectus

28  (citing TAC ¶¶ 2, 12), and that Ley, Dickson, Nazerathy, Kvamme, Lane, Lemieux, and

16

United States District Court

For the Northern District of California

1  Vaillaud – officers and directors of Harmonic – signed the registration statement and

2  prospectus (citing TAC ¶¶ 126, 135, 137-139).[6]  They also note that the TAC alleges that

3  defendants "actively and jointly caused to be drafted, revised, and approved the

4  [p]rospectus, finalized it, and caused it to become effective," TAC ¶ 135; that the purpose of

5  the acquisition of DiviCom through the sale of Harmonic stock to C-Cube shareholders was

6  to benefit Harmonic, TAC ¶¶ 27, 32-33.

7       Plaintiffs assert that in each of the cases cited by defendants for the proposition that

8  a signature on a prospectus is insufficient solicitation for liability under § 12(a)(2), there was

9  no buyer-seller relationship between the plaintiff and the "user."  They also contend that

10 most of the cases relied on by defendants involved "firm commitment" offerings – an

11 offering in which the issuer of the securities sells all the shares to be offered to one or more

12 underwriters, and investors purchase the shares directly from the underwriters and not

13 directly from the issuer – and they note, as the Supreme Court stated in Pinter, that "a

14 buyer cannot recover against his seller's seller."  Pinter, 486 U.S. at 644 n.21.

15      Plaintiffs cite four district court opinions in support of their argument that when a

16 purchaser buys a stock from the issuer, an officer or director of that issuer can be liable

17 under § 12(a)(2) for signing a misleading prospectus – In re Nat'l Golf Props., Inc. Sec.

18 Litig., 2003 WL 23018761 at *8-11 (C.D. Cal., Mar. 19, 2003) (allegations that issuer signed

19 a registration statement were sufficient to allege active solicitation of purchase of security);

20 Warman v. Overland Data, Inc., 1998 WL 110018 at *6 (S.D. Cal., Feb. 20, 1998)

21 (allegation that "defendants, as officers, were sellers, offerors and/or solicitors" of sales of

22 shares in IPO was sufficient to state claim under § 12(a)(2); In re Proxima Corp. Sec. Litig.,

23 1994 WL 374306 at *5 (S.D. Cal., May 3, 1994) (allegations that defendants actively

24 encouraged prospective purchasers to buy stock during road shows and as part of

25 telemarketing sales pitches, and thereby solicited sales by disseminating false

26 _____

27      [6]  Actually, what plaintiffs allege in the TAC is that Harmonic and all the individual
   defendants signed the registration statement, TAC ¶ 126; and that Harmonic and Ley signed
28 the prospectus, and Ley, Nazarathy, Kvamme, Lane, Lemieux, and Vaillaud "ordered the
   [p]rospectus to be signed."  TAC ¶ 137.

United States District Court

For the Northern District of California

1  prospectuses or by oral statements, satisfied <u>Pinter</u> and were sufficient to state claim under

2  § 12(a)(2)); and <u>In re Melridge, Inc., Sec. Litig.</u>, 1992 U.S. Dist. LEXIS 20510 at *12 (D. Or.

3  Mar. 3, 1992) (allegations that defendants signed registration statement and that securities

4  were sold by use of communication in interstate commerce or of the mails were sufficient to

5  state claim under § 12(a)(2)).

6         The court finds that the motion must be GRANTED as to all the individual

7  defendants.  As an initial matter, the court notes that the decision on appeal did not create

8  "law of the case" with regard to who qualifies as a "seller" in the present action.  Under the

9  jurisprudential doctrine of "law of the case," a "decision of an appellate court on a legal

10 issue must be followed in all subsequent proceedings in the same case."  <u>Snow-Erlin v.</u>

11 <u>United States</u>, __ F.3d __, 2006 WL 3290414 at *2 (9th Cir., Nov. 14, 2006) (quotations

12 and citations omitted), <u>amended</u> Dec. 6, 2006.  For the "law of the case" doctrine to apply,

13 however, the appellate court "must actually have decided the matter, explicitly or by

14 necessary implication," in its previous disposition.  <u>Id.</u>  Accordingly, on remand, the district

15 court is required to respect only "what the higher court decided," not "what it did not

16 decide."  <u>Id.</u> (citation and quotation omitted).

17        Here, the Ninth Circuit did not consider whether plaintiffs had adequately alleged

18 that defendants were "sellers" under § 12(a)(2).  For that reason, there is no "law of the

19 case" precluding defendants from moving to dismiss on the grounds that the individual

20 defendants are not "sellers."   The issue raised in the present motion is different from the

21 issue raised on appeal – which was whether the SAC adequately alleged that the

22 registration statement and prospectus contained misleading statements or material

23 omissions.

24        A similar situation arose in <u>In re Daou</u>.  The Ninth Circuit found that the plaintiffs had

25 adequately alleged material misrepresentations in defendants' various periodic disclosures.

26 However, relying on <u>Pinter</u>, the court ruled that a plaintiff in a § 12(a)(2) suit must also

27 allege facts showing that the defendants were "directly involved" in the actual solicitation of

28 the securities purchase, for their own financial gain or that of the securities holder.  <u>In re</u>

United States District Court
For the Northern District of California

1   Daou, 411 F.3d at 1029.  The court below had failed to reach that issue, because it

2   dismissed the § 12(a)(2) claim for lack of adequate allegations that defendants had made

3   false and misleading statements or material omissions.  The Ninth Circuit remanded the

4   case for consideration of the remaining elements of plaintiffs' § 12(a) claim to determine

5   whether the allegations were sufficient to survive dismissal under Rule 12(b)(6).  Id.

6        Similarly unpersuasive is plaintiffs' argument that Ley waived this ground for

7   dismissal by not raising it in earlier motions or before the Ninth Circuit.  Under Rule 12(h),

8   defenses for failure to state a claim may be presented at any time up to and including trial,

9   and under Rule 12(g), a party does not waive a ground for moving to dismiss for failure to

10  state a claim by not including that ground in an earlier motion to dismiss.  Fed. R. Civ. P.

11  12(g), (h).  As for the other individual defendants, they could not have waived the defense

12  as they were not previously named as defendants in this cause of action.  And to the extent

13  that the issue is one of standing – a question of subject matter jurisdiction – that defense is

14  never waived.[7]

15       Finally, the court finds that the § 12(a)(2) claim against the individual defendants

16  must be dismissed because the TAC does not adequately allege that they "solicited" the

17  purchase of Harmonic stock.  The TAC alleges that Dickson, Nazarathy, Kvamme, Lane,

18  Lemieux, or Vaillaud did not sign the prospectus, and that their involvement was limited to

19  participating in the drafting of the prospectus, in "order[ing] it to be signed," and in soliciting

20  proxies by "permitting the use of their names" in the prospectus and by recommending in

21  the prospectus that the C-Cube shareholders approve the merger.  However, that level of

22  involvement is insufficient under Pinter to qualify those defendants as "sellers," and the

23  TAC does not allege facts showing active solicitation of sales of stock.  See In re

24  Stratosphere, 1 F.Supp. 2d at 1121 (finding defendant's simple involvement in preparing

25  registration statement or prospectus, or participation in activities regarding the sale of

26

27       [7]  Standing is a jurisdictional prerequisite that courts are bound to address as early as

28  possible in the case.  See Hickman v. Block, 81 F.3d 98, 101 (9th Cir. 1996); see also Nordyke v. King, 319 F.3d 1185, 1192 (9th Cir. 2003).

United States District Court

For the Northern District of California

1  securities, not enough by itself to establish statutory seller status; see also DDi, 2005 WL

2  3090882 at *18.  Plaintiffs cite no cases holding that a defendant that has not signed a

3  prospectus can be liable under § 12(a)(2), absent allegations of facts showing actual

4  personal "solicitation" of sales of stock.

5       Nor is the addition of the claim against Ley that he signed the prospectus sufficient

6  to qualify him as a "seller."  The Ninth Circuit has not addressed whether merely signing a

7  prospectus constitutes active solicitation sufficient to render the signatory a "seller" under

8  12(a)(2).  While district courts are split on this issue, as demonstrated by the cases cited by

9  the parties herein, the circuits that have addressed the issue have determined that simply

10  signing a registration statement or prospectus provides an insufficient legal basis for relief.

11  See Rosenzweig v. Azurix Corp.,  332 F.3d 854, 871 (5th Cir. 2003) (rejecting the

12  contention that "signing the registration statement suffices for solicitation"); Craftmatic Sec.

13  Litig. v. Kraftsow, 890 F.2d 628, 636 (3d Cir. 1989) ("purchaser must demonstrate direct

14  and active participation in the solicitation of the immediate sale to hold the issuer liable as a

15  § 12(2) seller").

16       These rulings comport with the Pinter Court's determination that the fact that an

17  individual's activities constitute a "substantial factor" in a sale of securities is insufficient to

18  render that individual a seller under Section 12.  Pinter, 486 U.S. at 649-50.  The Court

19  emphasized that § 12(a) does not apply to those who merely "participate in soliciting the

20  purchase" of securities but do not actually solicit the purchase.  Id. at 650-51, n.27.

21       In addition, the Court carefully distinguished between § 11(a) – which "explicitly

22  enumerates the various categories of persons involved in the registration process who are

23  subject to suit . . . including many who are participants in the activities leading up to the

24  sale" – i.e., every person who signed the registration statement, every person who was a

25  director of or partner in the issuer at the time the registration statement was filed, every

26  person named in the registration statement as being or about to become a director, every

27  accountant named as having prepared part of the registration statement, and every

28  underwriter with respect to such security – and § 12(a), which contains no such provisions.

United States District Court

For the Northern District of California

1    Id. at 650 n.26 ("Congress did not intend to extend § 12 primary liability to collateral

2    participants in the unlawful securities sales transaction").  The Court concluded that

3    Congress "did not intend such persons [the categories enumerated in § 11] to be

4    defendants in § 12 actions."  Id.

5        Based on the Pinter Court's analysis, this court concludes that § 12(a), unlike

6    § 11(a), does not extend liability to those who simply sign a prospectus, without more.  The

7    court agrees with defendants that the cases they have cited state the better rationale for

8    resolving the issue here.  Under Pinter, the individual Harmonic defendants, all of whom

9    signed the registration statement, are already potentially liable under § 11(a), and cannot

10   be liable under § 12(a)(2) merely for preparing or signing a prospectus.

11       None of the cases cited by plaintiffs addresses this critical distinction between

12   § 11 and § 12.  The district court in Melbridge does not mention Pinter at all.  While the

13   Warman and In re Proxima courts do mention Pinter, they do not acknowledge that Pinter

14   excluded "mere participation" in solicitation as a basis for § 12(a) liability.  See Pinter, 486

15   U.S. at 651-52 n.27.  In particular, In re Nat'l Golf, the case on which plaintiffs primarily rely,

16   fails to explain how holding persons liable under § 12(a) for merely signing a prospectus

17   comports with Pinter's conclusion that Congress did not intend to include in

18   § 12 the categories denominated in § 11 of persons who are "participants in the activities

19   leading up to the sale."  Pinter, 486 U.S. at 650 n.26.

20       The fact that many of the cases cited by defendants involved a "firm commitment

21   underwriting" does not alter the result.  In a firm commitment underwriting, the issuer does

22   not sell its stock directly to the purchasers, but instead sells to the underwriter, who in turn

23   sells to the purchasing shareholders.  In re Stratosphere, 1 F.Supp. 2d at 1120 n.19.  As

24   defendants note, however, this distinction affects only who passes title, and does not

25   determine what constitutes "solicitation."  Passing title is one way to become a "seller"

26   under § 12(a)(2), and actively "soliciting" the purchase for financial gain is another.  Pinter,

27   486 U.S. at 643.  Plaintiffs do not allege that the individual defendants passed title to any

28   securities.  Thus, the fact that several of the cases cited by defendants involved firm

United States District Court

For the Northern District of California

1    commitment underwriting is without significance.

2         Plaintiffs' claim that the individual defendants were "sellers" because they were

3    acting to serve Harmonic's interests is similarly unpersuasive.  Even if the individual

4    defendants were attempting to serve Harmonic and its shareholders by completing the

5    DiviCom merger, that motivation alone is not sufficient to make them sellers, absent

6    allegations in the complaint of actual solicitation of stock purchases.

7         Finally, the court finds that the dismissal of the § 12(a)(2) claims against the

8    individual defendants must be without leave to amend.  Plaintiffs have had four

9    opportunities to allege their claims, and they offer no suggestion as to how they would

10   amend to better state a claim under § 12(a)(2).

11        3.      Statement of Opinion re "Best Interests"

12        Defendants argue that the statement of opinion regarding the "best interests" of

13   C-Cube shareholders cannot provide a basis for any claim, for three reasons.  First, they

14   note that this court previously dismissed the § 14(a) claim which alleged the same "best

15   interests" statement, and that the Ninth Circuit affirmed the dismissal.  They contend that

16   plaintiffs are attempting to re-plead the same claim (negligently making false statements in

17   proxy solicitations that were distributed to shareholders for purpose of inducing them to

18   approve the proposed merger) as a § 11 cause of action (making false statements in

19   registration statement) and a § 12(a)(2) cause of action (making false statements in

20   prospectus).  Defendants argue that plaintiffs should not be permitted to replead the same

21   claim under different statutory provisions.

22        Second, defendants contend that the "best interests" statement represents a

23   determination by the C-Cube board of directors, and that Harmonic and its board members

24   (defendants here) did not make any fairness representation to C-Cube's shareholders.

25        Third, defendants assert that the TAC fails to plead that the C-Cube board did not

26   sincerely believe its fairness opinion, or that any defendant did not believe that the C-Cube

27   board sincerely held that opinion.  Defendants note that in affirming the dismissal of the

28   § 14(a) claim, the Ninth Circuit held that the "best interests" statement was a "statement of

United States District Court
For the Northern District of California

1   opinion."  They contend that an opinion is actionable only if the plaintiff alleges that the

2   opinion was both objectively and subjectively false, and that the TAC alleges no facts

3   showing that the C-Cube board did not sincerely believe that the merger was in C-Cube's

4   best interests at the time they made the recommendation.

5         In opposition, plaintiffs assert that there is no scienter requirement for Securities Act

6   claims, and no requirement of a particularized pleading of falsity.  They note that the Ninth

7   Circuit has already ruled that they need not plead the Securities Act claims under the

8   heightened pleading standard appropriate in fraud cases, and that it is therefore not a

9   requirement that they plead with particularity the falsity of the statement that the merger

10  was in C-Cube's shareholders' best interests.  They argue that defendants have notice of

11  the alleged false statement that the merger was in the best interests of C-Cube

12  shareholders, and that nothing more is required at this stage of the litigation.

13        Plaintiffs assert that Ley, Dickson, Nazarathy, Kvamme, Lane, Lemieux, and

14  Vaillaud signed the registration statement, and sent it to C-Cube's shareholders, and that

15  those defendants are responsible under § 11(a) for any misrepresentation or material

16  omission in the registration statement, even a statement attributed to C-Cube's board of

17  directors.  They also contend that under § 12(a)(2), all those who offer or sell a security

18  pursuant to a misleading prospectus are subject to liability, and there is no limitation that a

19  defendant is liable for only those parts of the prospectus that are directly attributable to him

20  or her.  Thus, plaintiffs assert, plaintiffs are liable for any and all misleading statements in

21  the prospectus.

22        The court finds that the motion must be GRANTED.  First, the statement is in the

23  portion of the proxy solicitation that is headed "Notice of Special Meeting of [C-Cube]

24  Shareholders," and is signed by the President and CEO of C-Cube, "By Order of the Board

25  of Directors of C-Cube Microsystems, Inc."  Plaintiffs have alleged no facts showing that

26  this statement of opinion should be attributed to the Harmonic defendants.

27        Moreover, the opinion expressed by C-Cube's board of directors – that the merger

28  would be "in the best interests of C-Cube's shareholders – is not a misstatement of

1   "material fact," or a statement of fact that is false or misleading because it omits to state

2   other material facts necessary to make it not misleading.  While an "opinion" can be

3   considered a "fact" for purposes of § 11(a), a plaintiff must show that the defendant did not

4   believe in the statement made.  See Kane v. Madge Networks N.V., 2000 WL 33208116 at

5   *12 n.16 (N.D. Cal., May 26, 2000) (plaintiffs failed to state § 11(a) claim because they

6   failed to plead facts showing that defendant directors did not believe in truth of fairness

7   opinion); see also Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1094-95 (1991)

8   (statement of opinion is actionable only if both objectively and subjectively false).

9           Even if one assumes that plaintiffs adequately alleged facts showing that the

10  C-Cube board's opinion was objectively incorrect, the TAC alleges no facts showing that

11  the members of the C-Cube board did not sincerely believe that the merger was in

12  C-Cube's best interests at the time they made the recommendation.  Because this opinion

13  is not a statement of fact, and plaintiffs do not allege any reason why it is false – e.g., that

14  the board of directors did not believe it – the statement cannot provide the basis for a claim

15  under § 11 or § 12.

16          4.      Motion to Strike Background Allegations

17          Finally, defendants seek an order striking the "background" allegations in ¶¶ 45-56,

18  67-70, 74-76, 80, and 82.  These are similar to the allegations of statements in conference

19  calls, press releases, analysts' reports, and other publications – including press releases

20  and reports published after the registration statement and prospectus were issued – which

21  were alleged in the SAC to be false and misleading under § 10(b) and Rule 10b-5.  In the

22  TAC, plaintiffs suggest that these statements created a "false impression" and failed to

23  report known negative information.

24          Defendants contend that these "background" allegations should be stricken because

25  they are irrelevant to the § 11(a) and § 12(a)(2) claims, which turn on the alleged

26  misleading statements in the registration statement and the prospectus, not on any alleged

27  misrepresentations in press releases and other public statements by Harmonic defendants.

28  Defendants submit that the issue of omitting information from the press releases and other

24

United States District Court

For the Northern District of California

1    public statements is simply not relevant to the issue of omitting information from the

2    registration statement and the prospectus.  They contend that allowing plaintiffs to include

3    the allegations about public statements generally would blur the distinction between claims

4    under the Exchange Act and claims under the Securities Act.

5          Second, defendants argue that the "background" allegations should be stricken

6    because they are prejudicial to defendants.  They note that these allegations have already

7    been found not to state an actionable claim under the Exchange Act, and argue that

8    plaintiffs are simply attempting to have the dismissed Exchange Act claims included as part

9    of the Securities Act claims.  They assert that plaintiffs were able to proceed with their

10   Securities Act claims only by carefully re-pleading the complaint and specifically alleging

11   that the Securities Act claims were not based on any claim of fraud.  Defendants contend

12   that it would be unfair for the court to allow plaintiffs to retain all the allegations of alleged

13   misleading statements that they used to support their securities fraud claims, now that

14   those claims have been dismissed.  Defendants also argue that they should not have to

15   answer multiple paragraphs of "background" allegations, or have to respond to discovery

16   regarding warmed-over allegations that have been dismissed with prejudice.

17         In opposition, plaintiffs argue that their "background" allegations are relevant to their

18   current claims, to show the extent of defendants' solicitations, particularly the press

19   releases and the public statements issued prior to the merger.  Plaintiffs claim that the

20   "background" allegations are relevant because they show what investors knew, what

21   Harmonic did and did not disclose, and what solicitation efforts the defendants made.  They

22   argue that the allegations regarding public statements made shortly before and after the

23   issuance of the registration statement and prospectus are probative of "how the state of

24   affairs at Harmonic and DiviCom was portrayed to the market."

25         Plaintiffs also claim that what was said to the public outside the registration

26   statement – referring to the "background" allegations – helps show that the information

27   omitted from the offering documents was material. They contend that Harmonic provided, in

28   the registration statement and prospectus, past financial information that conformed with

United States District Court

For the Northern District of California

1   historically positive information relayed to the market, but omitted the information about the

2   downturn that had occurred in Harmonic's and DiviCom's business, and in so doing,

3   affirmatively created an impression that the businesses had not suffered the downturns

4   they in fact had suffered.

5          Plaintiffs assert that defendants' motion does not meet the standard for a motion to

6   strike under Rule 12(f), because defendants do not argue that the "background" allegations

7   are "redundant," "irrelevant," "impertinent," or "scandalous."  They also contend that the

8   cases cited by defendants do not support their argument, but rather support an application

9   of the general standard of Rule 12(f), which involves examining the relationship of the

10   allegations to the claims in the complaint.

11          The court finds that the motion to strike the factual allegations in ¶¶  45-56, 67-70,

12   74-76, 80, and 82 must be GRANTED.  Plaintiffs included these allegations in the FAC and

13   the SAC to support their claims under the Exchange Act.  As part of their effort to show that

14   the Securities Act claims were not grounded in fraud, plaintiffs argued at length that the

15   facts supporting the fraud claims were completely separate from the allegations supporting

16   the Securities Act claims.  The Ninth Circuit accepted that argument and found that

17   plaintiffs had adequately alleged misrepresentations in the registration statement and the

18   prospectus, based on the assertions that the registration statement and the prospectus did

19   not disclose the slow-down in AT&T orders or the slow-down in DiviCom's business, and

20   that those claims were not grounded in fraud.  The allegations in ¶¶ 45-56, 67-70, 74-76,

21   80, and 82 are irrelevant to the violations of § 11 and § 12 as pled in the TAC.

22          Specifically, the allegations that the January 19, 2000, press release failed to

23   disclose the decline in sales to AT&T in 4Q1999 or the declining orders from At&T that

24   would inevitably result in declining sales to AT&T in 2000, and failed to disclose weakening

25   sales and income at DiviCom, TAC ¶ 46-50; and the allegations that the January 19, 2000,

26   conference call with analysts and portfolio managers failed to disclose declining sales to

27   and orders from AT&T, TAC ¶¶ 51-52, are irrelevant to a determination whether defendants

28   violated § 11 and § 12(a)(2) by failing to disclose in the March 23, 2000, registration

United States District Court

For the Northern District of California

1  statement and the prospectus the alleged slow-down in business for AT&T and DiviCom.

2      Similarly, the allegations that the analysts' reports issued on January 20, 2000, by

3  SG Cowen Securities and H.C. Wainwright & Co. estimated a $130 target price for

4  Harmonic stock, TAC ¶¶ 54-55; and the allegations that Harmonic and C-Cube issued

5  numerous press releases between October 27, 1999, and March 23, 2000, reporting bright

6  prospects for business are completely irrelevant to the question whether defendants

7  violated § 11 and § 12(a)(2) by failing to disclose in the March 23, 2000, registration

8  statement and the prospectus the alleged slow-down in business for AT&T and DiviCom.

9      Likewise, the allegations of statements made after the March 23, 2000, filing of the

10  registration statement and prospectus are all completely irrelevant to the question whether

11  defendants violated § 11 and § 12 by making misleading statements in the registration

12  statement and prospectus.  In this category, the court includes the "numerous public

13  statements" and "six press releases" allegedly issued by Harmonic between March 23,

14  2000, and April 24, 2000, regarding the strength of its business and DiviCom's business,

15  TAC ¶¶  67, 76; the statements allegedly made by Ley and Dickson to financial analysts at

16  a March 28, 2000, conference in Cannes, France, regarding Harmonic's "strong business

17  trends," TAC ¶ 68; the reports released by S.G. Cowen on March 28, 2000, allegedly based

18  on the statements made by Ley and Dickson at the Cannes conference, TAC ¶¶ 69-70; the

19  joint press release issued by Harmonic and C-Cube on April 19, 2000, stating that "AT&T

20  continued to be [Harmonic's] largest single customer;" stating that "[w]e [referring to

21  Harmonic] are very pleased with our sales and profitability in the first quarter;" and stating

22  that the acquisition of DiviCom "will allow us to offer more complete solutions for cable

23  operators, as well as expand our penetration into telco, satellite, wireless, and other

24  emerging broadband markets," TAC ¶¶ 74-75; the C-Cube press release issued April 24,

25  2000, reporting the shareholder approval of the merger, and reporting 1Q 2000 revenue for

26  C-Cube which specifically did not include revenue for DiviCom, TAC ¶ 80; and the analyst's

27  report issued by Cowen on May 4, 2000, allegedly based on conversations with Ley and

28  Dickson, TAC ¶ 82.

United States District Court

For the Northern District of California

1    In addition, given the fact that these allegations are irrelevant to the Securities Act

2   claims, the court finds that defendants would be prejudiced if they were compelled to

3   respond to these allegations, or to respond to discovery propounded by plaintiffs into any

4   issues beyond those raised in the § 11 and § 12(a)(2) claims – that is, whether sales to and

5   orders from AT&T were down as of the date of the issuance of the offering documents,

6   whether DiviCom's business was down in the first quarter of 2000, and whether the

7   registration statement and prospectus were misleading because they omitted to include

8   information regarding this alleged decline in business.

**CONCLUSION**

10   1.    The motion to dismiss the § 15 claim against Ley is DENIED.  The motion to

11   dismiss the § 15 claim against Dickson is DENIED.  The motion to dismiss the § 15 claim

12   against Harmonic is DENIED.

13   2.    The motion to dismiss the § 12(a)(2) claims against Nazerathy, Kvamme,

14   Lane, Lemieux, and Vaillaud is GRANTED because the TAC does not allege that they

15   signed the prospectus and also does not allege facts showing that they were "sellers" who

16   "solicited" the purchase of securities.  For the same reasons, the motion is also GRANTED

17   as to Dickson, to the extent that the TAC alleges this claim against Dickson.  The motion is

18   GRANTED as to Ley because, even though the TAC alleges that Ley signed the

19   prospectus, that allegation alone (even with the additional allegations) is not sufficient to

20   state facts showing solicitation or active participation.  The dismissal of the § 12(a)(2)

21   claims against the individual defendants is WITHOUT LEAVE TO AMEND.

22   3.    The motion to dismiss the claim that the statement of opinion regarding

23   the merger being in the "best interests" of C-Cube shareholders is GRANTED because it is

24   an opinion, not a statement of fact, and because plaintiffs allege no facts showing that

25   defendants believed the statement was false.  Moreover, the statement is in the portion of

26   the proxy solicitation that is headed "Notice of Special Meeting of [C-Cube] Shareholders,"

27   and is signed by the President and CEO of C-Cube, "By Order of the Board of Directors of

28   C-Cube Microsystems, Inc." and is therefore not a statement attributable to any of the

28

Harmonic defendants.

4.      The motion to strike the background allegations in ¶¶ 45-56, 67-70, 74-76, 80, and 82 is GRANTED, as they are irrelevant to the 1933 Act claims, and because defendants would be prejudiced if compelled to defend against such irrelevant allegations.

**IT IS SO ORDERED.**

Dated:  December 11, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge